United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JARRITOS, INC.,

Plaintiff,

v.

LOS JARRITOS, et al.,

Defendants.

_______________________________________/

No. C 05-02380 JSW

**ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS**

Now before the Court is the motion for summary judgment and the motion to strike expert reports filed by defendants Los Jarritos, Delores Reyes and Francisco Reyes (collectively, "Defendants"). Having carefully reviewed the parties' papers, considered their arguments and the relevant authority, and good cause appearing, the Court hereby grants Defendants' motion for summary judgment and grants in part and denies in part Defendants' motion for sanctions.[1]

## BACKGROUND

This action arises out of a trademark dispute between the parties. Plaintiff alleges that it manufactures and distributes soft drinks under the name Jarritos in bottles with a Jarritos logo, consisting of the word Jarritos and a picture of three jugs. Plaintiff further alleges that it owns four registrations in the United States of some form of the term "Jarritos" or some form of the three-jug logo. (Compl., ¶¶ 14-18.)

---

[1] The Court GRANTS Plaintiff's request to file a sur-reply as to Defendants' motion for sanctions.

United States District Court
For the Northern District of California

Defendants own and run a restaurant with the name Los Jarritos located in San Francisco. Defendants opened this restaurant in 1988. (Declaration of Roy Gordet in support of motion for summary judgment ("Gordet Decl. re Summary Judgment"), Ex. A at 12:16 - 13:1.) Plaintiff contends that Defendants' name "Los Jarritos" and purported use of Plaintiff's logo in their restaurant sign infringes its mark.

Plaintiff filed this action on June 6, 2005, asserting the following claims: (1) federal trademark infringement; (2) common law trademark infringement; (3) unfair competition pursuant to California Business and Professions Code § 17200; (4) common law palming off; (5) federal false designation of origin and false representation pursuant to the Lanham Act, 15 U.S.C. § 1125; (6) federal trademark dilution pursuant to 15 U.S.C. § 1125; and (7) trademark infringement and dilution under California law pursuant to California Business and Professions Code §§ 14320 through 14312.

On October 7, 2005, the Court set the close of fact discovery for May 30, 2006, and the close of expert discovery for July 31, 2006. (Docket No. 16.) On April 14, 2006, the Court extended the close of fact discovery to August 24, 2006, and extended expert discovery to October 23, 2006. (Docket. No. 33.) On August 2, 2006, pursuant to the parties stipulated request, the Court further extended the close of fact discovery to October 23, 2006 and expert discovery to December 20, 2006. (Docket No. 78.) Despite these extensions, Defendants moved to extend the discovery deadline to enable them to take certain depositions. In response, Plaintiff requested that the deadline for all discovery be extended to December 17, 2006. Pursuant to this request, on October 26, 2006, the Court extended the deadline for all discovery until December 16, 2006, but advised that it would be the final extension of discovery in this matter. (Docket No. 99.) However, pursuant to the parties' stipulation and request for clarification, the Court extended the close of expert discovery one more time to February 16, 2007 and set the deadline to disclose expert reports for January 17, 2007. (Docket No. 108.) The Court set February 9, 2007, as the last day to hear dispositive motions, scheduled the pretrial conference for May 7, 2007, and set the date for trial to begin for June 4, 2007. (*Id.*)

United States District Court
For the Northern District of California

On January 5, 2007, Defendants filed a motion for summary judgment and noticed it to be heard on February 9, 2007. On January 10, 2007, Plaintiff filed an administrative request seeking additional time to respond to the pending motion for summary judgment and to stay the remainder of the case pending the hearing on the motion for summary judgment, including any discovery deadlines. (Docket No. 113.) On January 18, 2007, the Court granted Plaintiff's request for more time to respond to the motion for summary judgment and continued the hearing date to March 23, 2007, but denied the request for a stay. (Docket No. 118.)

On January 17, 2007, Plaintiff sent Defendants a letter disclosing its experts and the subjects on which the experts would testify. (Declaration of Roy S. Gordet in support of motion for sanctions ("Gordet Decl. re Sanctions"), Ex. A.) In the letter, Plaintiff stated:

> Although we expect that the Court will grant an extension and/or stay, I am identifying our expert witnesses who may testify ... since we said we would identify expert witnesses by today. Obviously, this is a work-in-progress and the summary judgment motion, the deposition to be completed, and the financial statements or underlying documents to be provided make it so.

(*Id.*) Plaintiff disclosed: (1) Alan Silverman who would "testify regarding Defendants' profits, and Plaintiff's damages in this action;" (2) Kenneth B. Germain who would "testify as to Patent and Trademark Office practice, trademark registrations and recordations, assignments, third party users and concurrent users, and trademark dilution factors and remedies, and trademark infringement factors and remedies;" (3) Michelle Valdvinos and Sharmila Fowler from Phoenix Cultural Access Group who would "testify regarding the Hispanic and non-Hispanic market, the brand identification, brand recognition, and fame of the JARRITOS marks, likelihood of confusion and dilution, Hispanic market and mainstream demographics, product marketing and advertising, secondary research, and survey evidence;" and (4) Antonio L. Dieste who would "testify regarding the fame, brand identification, and recognition of the JARRITOS trademarks, and the likelihood of confusion, mistake, or deception resulting from the use of LOS JARRITOS and/or the JARRITOS logo." (*Id.*)[2]

---

[2] Plaintiff also disclosed Jamie Sendra as an expert witnesses but made clear in its opposition to the pending motion for sanctions that it no longer intends to use him as an expert. (Gordet Decl. re Sanctions, Ex. A; Declaration of Neil A. Smith in opposition to motion for sanctions ("Smith Decl. re Sanctions"), ¶ 20.)

United States District Court
For the Northern District of California

The following day, on January 18, 2007, Plaintiff faxed Defendants the resumes of Mr. Silverman and Ms. Valdvinos and a brief description of Ms. Fowler's and Mr. Dieste's backgrounds. (*Id.*, Ex. B.) Defendants sent Plaintiff a letter dated January 19, 2007, in which Defendants advised Plaintiff that its disclosure was inadequate because it did not provide the expert witnesses' reports. (*Id.*, Ex. C.) That same day, Plaintiff faxed a copy of Mr. Germain's initial expert report. (*Id.*, Ex. D.) On January 23, 2007, Plaintiff faxed Defendants a copy of Ms. Fowler's resume. (*Id.*, Ex. F.)

The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

### A. Defendants' Motion for Sanctions to Strike Late Filed Expert Reports.

Defendants move pursuant to Federal Civil Rule 37(c)(1) ("Rule 37") to strike any testimony, including the submission of expert reports, by Plaintiff's experts Mr. Silverman, Mr. Germain, Ms. Valdvinos, Ms. Fowler, and Mr. Dieste. Defendants argue that Plaintiff failed to serve its experts' reports within the Court-set deadline in violation of Federal Rule of Civil Procedure 26(a) ("Rule 26") and, thus, should be stricken.

Rule 26 requires parties to disclose the identity of their expert witnesses "accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). Parties are required to serve their opening and expert rebuttal reports "at the times and in the sequence directed by the court." Fed. R. Civ. Proc. 26(a)(2)(c). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."[3] *Yetti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This rule excludes untimely expert witness testimony, unless the "parties' failure to disclose the required information is substantially justified or harmless." *Id.*; *see also Carson Harbor Village, Ltd. v. Unocal Corp.*, 2003 WL 22038700, *2 (C.D. Cal. 2003) ("Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely

---

[3] Rule 37 provides in pertinent part: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. Proc. 37(c)(1).

fashion is automatic and mandatory unless the party can show the violation is either justified or harmless.") (internal quotes and citation omitted). Plaintiff bears the burden of demonstrating its failure was either substantially justified or harmless. *See Yetti by Molly*, 259 F.3d at 1107.

**1. Substantial Justification.**

In response to Defendants' motion for sanctions, Plaintiff proffers several reasons for its delay in serving its expert reports, none of which were provided by the deadline of January 17, 2007. Plaintiff contends that: (1) the Court order setting the deadline to disclose experts did not include a requirement to submit expert reports; (2) the parties understood that the expert reports could be submitted after the deadline; (3) Plaintiff requested and expected a stay of this deadline to be granted; (4) the reports are not late because they are in large part offered to rebut Defendants' experts' reports; and (5) Plaintiff could not submit Mr. Silverman's expert report on damages because it did not yet have all of Defendants' financial documents. The Court finds that none of these proffered reasons provide substantial justification for Plaintiff's delay.

**a. Court's Deadline.**

The Court's deadline to disclose expert witnesses was January 17, 2007. Rule 26 requires that the disclosure of an expert witness "be made at the time and in the sequence directed by the Court" and "be accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B),(C). The report is required to "contain a complete statement of all opinions to be expressed and the basis and the reasons therefor; the data or other information considered by the witness in forming the opinions." *Id*. Therefore, the Court-set deadline to disclose expert witnesses included an obligation to serve such witnesses' expert reports.

**b. Party Agreement or Understanding.**

To the extent Plaintiff argues there was an agreement or understanding between the parties to serve the expert reports later, Plaintiff failed to submit evidence demonstrating such agreement or to provide authority demonstrating that, even if such agreement was reached, that the parties could extend a Court-set deadline without leave of Court. Plaintiff's reliance on Defendants' expert disclosure to show such agreement is misplaced. On January 17, 2007,

United States District Court
For the Northern District of California

Defendants disclosed E. Lynn Perry and Dr. José B. Cuellar as experts. (Smith Decl. re Sanctions, Ex. 3.) With this disclosure, Defendants provided Ms. Perry's curriculum vitae and expert report and Dr. Cuellar's curriculum vitae. (*Id.*) Although Defendants did not provide Dr. Cuellar's report at that time, they explained that Dr. Cuellar suffered from a serious accident which rendered him temporarily unable to complete his report. (*Id.*) If there was an understanding or agreement that reports could be provided later, there would have been no reason for Defendants to explain why they were not submitting Dr. Cuellar's report within the deadline. Moreover, the Court notes that Defendants strenuously object that the parties had an agreement to delay serving expert reports. (Reply re Mot. for Sanctions at 2-3.) The letter that Defendants sent to Plaintiff two days after the deadline expired advising Plaintiff that its failure to provide expert reports violated the Court order and the Federal Rules of Civil Procedure confirms that Defendants did not believe there was an agreement to delay submitting expert reports. (Gordet Decl. re Sanctions, Ex. C.)

**c. Request for Extension.**

Nor does the Court find Plaintiff's reliance on its request to stay its discovery obligations and the week it took the Court to rule on such request provides substantial justification. Expert discovery was initially set to close on July 31, 2006. Pursuant to numerous requests, the Court extended the deadline, but made clear that would be the final extension. Thus, Plaintiff should have been aware that the Court would not be inclined to extend discovery obligations yet again. Moreover, until the Court ruled on such request, it was not reasonable or justified for Plaintiff to assume the request would be granted.

**d. Purported Rebuttal Reports by Ms. Valdvinos, Ms. Fowler, and Mr. Dieste.**

Plaintiff also argues that the reports were not required to be served by January 17, 2007 because they were offered to rebut the reports by Defendants' experts. Specifically, Plaintiff contends that the reports by Ms. Valdvinos, Ms. Fowler, and Mr. Dieste are rebuttal reports to

Defendant's expert Dr. Cuellar.[4] The Court finds Plaintiff's position is unsupported in light of the fact that Plaintiff disclosed these experts and the subjects on which they would testify on January 17, 2007 before it received Dr. Cuellar's report or even the subject of his report. Their reports that Plaintiff ultimately submitted were on the exact subjects that Plaintiff had previously disclosed.

Moreover, with respect to Ms. Valdvinos and Ms. Fowler in particular, there is evidence that they were communicating with Plaintiff regarding their reports and surveys before they received Dr. Cuellar's report. (Supplemental Declaration of Roy S. Gordet in Support of Reply re Motion for Sanctions, Ex. J.) It appears that a draft of Ms. Fowler's report was faxed from Phoenix Cultural Access Group on January 20, 2007, just three days after Plaintiff and Defendants disclosed their experts and the subject matters on which they would testify. (*Id.*) In fact, in Plaintiff's sur-reply regarding the motion for sanctions, Plaintiff concedes that at the time of the principal preparation of the reports by Ms. Valdvinos, Ms. Fowler, and Mr. Dieste, Plaintiff had not yet received Dr. Cuellar's report. (Declaration of Neil Smith in Support of Plaintiff's Sur-Reply re Motion for Sanctions, ¶ 9.) Additionally, in its sur-reply, Plaintiff implies that it had commissioned the survey by the Phoenix Cultural Access Group before the deadline for disclosing experts and that Plaintiff seeks to use these reports on direct. (Sur-Reply re Mot. for Sanctions at 4-5: "Of course, Plaintiff was commissioning a survey. Several earlier surveys had been produced in discovery, and Defendants' [*sic*] had chided them as limiting, and as not being current, so the survey and the other current evidence were to be provided. ... The experts should be permitted to testify ... either on direct for Defendants' counterclaim, or as rebuttal.").

Finally, an examination of the reports by Ms. Valdvinos, Ms. Fowler, and Mr. Dieste further supports the Court's conclusion that they are not rebuttal reports within the meaning of

[4] Plaintiff also contends that Mr. Germain's second report is a rebuttal to Defendants' expert Ms. Perry. At the hearing on Defendants' motions, Defendants clarified that they do not contend that Mr. Germain's second report is not properly characterized as rebuttal. The Court has reviewed Mr. Germain's second report dated February 1, 2007, and finds that it is properly considered a rebuttal report, and thus, was not required to be submitted by January 17, 2007.

United States District Court
For the Northern District of California

Federal Rule of Civil Procedure 26, *i.e.* an opinion offered "*solely to contradict or rebut* evidence on the same subject matter identified by" Dr. Cuellar. *See* Fed. R. Civ. Proc. 26 (a)(2) (emphasis added). Although each report is entitled "rebuttal," the substance of their reports do not actually rebut or even directly address Dr. Cuellar's opinions.

In both Ms. Validvinos' and Ms. Fowler's reports, their only reference to Dr. Cuellar's report is a brief conclusory statement stating that the experts have read and considered the points raised in Dr. Cuellar's report. (Smith Decl. re Sanctions, Ex. 5.) In her report dated February 14, 2007, Ms. Valdvinos states: "I have read the report of Professor Cuellar and considered the points raised regarding the archaeological and symbolic significance of 'jarritos' in Mexican and Central American cultures. However, the report provides no statistical evidence related to the awareness and imagery that is associated with "jarritos" among today's U.S. Hispanics." (*Id.*) This one paragraph is the *only* mention of Dr. Cuellar's report in her entire 34-page report and survey. (*Id.*) In her report dated February 3, 2007, Ms. Fowler states:

> 4. In connection with the current case, I have been asked to comment on the popularity of the Jarritos brand. A list of the specific materials I have reviewed in connection with this Expert Report is attached as Exhibit 2.
>
> 5. I have reviewed the report of Jose Cuellar who has remarked upon the word "jarritos" being a cultural icon. From my research and in my opinion, the word "jarritos" is better known as a brand than a cultural icon.

(*Id.*) Again, this brief reference to Dr. Cuellar's report is the only one in Ms. Fowler's entire report. By inserting a brief reference to Dr. Cuellar's report and labeling them as rebuttal, Plaintiff seeks to circumvent the rule of production by characterizing as "rebuttal" what are otherwise substantive reports in support of its case in chief. To adopt Plaintiff's argument would elevate form over substance.

With respect to Mr. Dieste, his initial expert report, dated January 30, 2007, does not mention Dr. Cuellar or his report. (Smith Decl., Ex. 6.) Mr. Dieste then attaches a page entitled "Supplemental Statement re Expert Report of Antonio Dieste" in which he states:

> 1. I am preparing this supplemental report at the request of the attorneys for Jarritos, Inc. in response to the report of Dr. Jose Cuellar. I incorporate all of my training, education and background from my original report and that report, attached, into this report for all purposes.
>
> 2. I have reviewed the report of Dr. Jose Cuellar. I am not familar with Dr. Cuellar and have never met or heard of him before.

> 3. As someone who was born in Mexico and has lived in Mexico for most of my life, I am very familiar with jarros and their cultural significance, if any, in Mexico. The term "jarros" literally means jugs when translated into English. The term "jarritos" is translated literally to mean little jugs in English. In my opinion, Dr. Cuellar is mistaken in his belief that the term "jarritos" has taken on some special or significant meaning in Mexico or the United States. In my knowledge it has the trademark meaning described in detail in my earlier report, which appropriately rebuts Dr. Cuellar's statements as to the significance of "jarritos" to the Mexican people.

(Smith Decl. re Sanctions, Ex. 6.) The Court finds that while the "Supplemental Statement" by Mr. Dieste is offered "solely to contradict or rebut" Dr. Cuellar's report, Plaintiff cannot incorporate by reference the earlier report prepared by Mr. Dieste that impliedly was not prepared in reference to or in rebuttal to Dr. Cuellar's report.

When the initial report by Mr. Dieste and the reports by Ms. Valdvinos and Ms. Fowler are compared with the rebuttal report by Mr. Germain, it becomes even more clear that they are not rebuttal reports. Mr. Germain begins his rebuttal by stating that Plaintiff's counsel asked him "to review and comment upon" Ms. Perry's expert report. (Smith Decl. re Sanctions, Ex. 4.) Mr. Germain then goes on to address the specific points and opinions proffered by Ms. Perry's report in detail. (*Id.*) In contrast, with the exception of the sole paragraphs referencing Dr. Cuellar in Ms. Valdvinos' and Ms. Fowler's reports and the one-page "Supplemental Statement" by Mr. Dieste, the reports by Ms. Valdvinos, Ms. Fowler, and Mr. Dieste fail to consider or address the substance of Dr. Cuellar's opinions. The Court thus concludes that, except for the small portions discussed above, their reports are not rebuttal. Accordingly, the Court finds that Plaintiff fails to provide a substantial justification for their late submission.

**e. Report by Mr. Silverman.**

Plaintiff argues that its delay in submitting Mr. Silverman's report on damages is substantially justified because it needed "updated profit information." (Opp. to Mot. for Sanctions at 6.) At the hearing on Defendants' motions, Plaintiff clarified the documents it contends it needs are Defendants' income statements for the last six months and additional underlying financial documents. Although not clearly argued in its opposition brief, Plaintiff contends that its delay is also justified by its need for documents held by third party Mission Economic Development Agency ("MEDA"). At the hearing, Plaintiff explained that

United States District Court
For the Northern District of California

Defendants' financial records only extended back five years and that MEDA had earlier financial records of Defendants.

Plaintiff does not dispute that it had copies of Defendants' financial documents for the last five years, with the exception of the last six months. Nor does Plaintiff dispute that it did not move to compel production of the documents it contends it needs for Mr. Silverman to prepare his report. According to Plaintiff, its delay is justified because Defendants promised to produce such documents. However, Plaintiff's evidence fails to demonstrate the existence of such a promise. (Smith Decl. re Sanctions, Ex. 2.) Notably, Plaintiff provides no explanation for why, even if additional documents were needed to prepare a complete report on damages, it has not submitted a preliminary report on damages based on the five years worth of financial documents from Defendants that it does posses. Accordingly, the Court finds that Plaintiff's delay in submitting an expert report from Mr. Silverman on damages is not substantially justified.

**2. Harmlessness.**

With the exception of the initial report from Mr. Germain produced two days late, the Court finds that Plaintiff fails to demonstrate that its failure to timely provide its experts' reports was harmless. The deadlines to disclose experts and to conduct expert discovery have both passed. At the time that the motion for sanctions was argued on March 30, 2007, the pretrial conference was scheduled to occur within approximately one month and trial was scheduled to begin four weeks later, on June 4, 2007. The parties debate whether Defendants had a fair opportunity to depose Ms. Valdvinos, Ms. Fowler, or Mr. Dieste when discovery was open. Even assuming *arguendo* that Defendants did have a fair opportunity to depose them during the discovery period, Plaintiff does not dispute, or otherwise demonstrate, that Defendants lost their opportunity to locate and designate experts to rebut the late reports submitted by Plaintiff. In order properly to rebut the proposed expert reports submitted by Ms. Valdvinos, Ms. Fowler, or Mr. Dieste, Defendants would need to have discovery reopened, as well as extend the period for submitting rebuttal expert reports. Moreover, the Court would need to continue both the pretrial conference and the trial. Disruption of the schedule of the

Court and of Defendants "is not harmless." *See Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (finding untimely disclosure of expert witness was not harmless, "even though the ultimate trial date was still some months away" where the deadlines for completing discovery and for filing motions for summary judgment had expired); *see also Carson Harbor Village, Ltd. v. Unocal Corp.*, 2003 WL 22038700, *3 (C.D. Cal. 2003) (finding submission of untimely expert evidence would substantially prejudice defendants because they would have incurred significant expenses in deposing the proffered expert and in preparing an appropriate expert rebuttal and would have suffered from prolonged proceedings if it were allowed). The Court thus finds admitting these untimely expert reports at this stage in the litigation would not be harmless to Defendants.

On the other hand, the Court finds that Plaintiff has demonstrated its two-day delay in serving its expert report by Mr. Germain is harmless. The two-day delay did not preclude Defendants from deposing Mr. Germain or in designating an expert to rebut his opinions. Defendants argue they were prejudiced by the fact that his report specified that he was asked to consider certain issues in the context of Defendants' motion for summary judgment, and thus, it was not clear to Defendants that Plaintiff intended to use Mr. Germain as an expert at trial. The Court finds such argument unpersuasive. Mr. Germain explained in his report that he was retained by Plaintiff in connection with this *case*. (Smith Decl. re Summary Judgment, Ex. I at ¶ 4.) Although his opinions were provided in the context of Defendants' motion for summary judgment, he explains that he did so because the motion provided the best description of Defendants' evidence and arguments. (*Id.*, Ex. I at ¶ 8.) Moreover, in Plaintiff's description of the subject matter on which Mr. Germain would testify, Plaintiff does not limit his proposed testimony to the motion for summary judgment. If Defendants would have retained a rebuttal expert but chose not to because they mistakenly believed Plaintiff only intended to use Mr. Germain's report with respect to the pending motion for summary judgment, their failure to do so cannot be attributed to Plaintiff.

Accordingly, the Court denies Defendants' motion for sanctions as to Mr. Germain's opening and rebuttal report, Mr. Dieste's supplemental statement, and the sole paragraph in

United States District Court
For the Northern District of California

each of Ms. Fowler's and Ms. Valdvinos' reports which reference Dr. Cuellar. The Court grants the motion as to the remainder of Plaintiff's expert reports. The Court will not consider such stricken evidence in support of Plaintiff's opposition to Defendants' motion for summary judgment.

**B. Defendants' Motion for Summary Judgment.**

**1. Applicable Legal Standards.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could

United States District Court
For the Northern District of California

reasonably find for the [non-moving party].”). In order to make this showing, the non-moving party must “identify with reasonable particularity the evidence that precludes summary judgment.” *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court’s task to “scour the record in search of a genuine issue of triable fact.” *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

“In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party.” *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**2. Defendants’ Evidentiary Objections.**

Defendants submit objections to most, if not all, of the evidence submitted by Plaintiff in opposition to Defendants’ motion for summary judgment. Plaintiff argues that Defendants’ evidentiary objections are inappropriate because its evidence “is, at least, admissible in content, if not form and content.” (Response to Evid. Object. at 1.) “A trial court can only consider admissible evidence in ruling on a motion for summary judgment.” *Orr v. Bank for America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Thus, the Court will address Defendants’ objections in turn.[5]

**a. Defendants’ Restaurant Sign.**

Defendants object to admission of a black and white copy of a purported photograph of Defendants’ restaurant sign attached as Exhibit A to the Declaration of Neil Smith in support of

---

[5] Defendants make numerous objections to statements made in Plaintiff’s opposition brief on the grounds that they are not actually supported by the evidence referenced by Plaintiff. Despite the fact that these are not technically evidentiary objections, in the sense that Defendants are not seeking to demonstrate the evidence cited to is inadmissible, Defendants have raised valid deficiencies as to Plaintiff’s opposition. In response, Plaintiff offhandedly references documents which were produced in discovery, but do not appear to be in the record before the Court, or attempts to submit additional evidence after the briefing on the motion for summary judgment has been closed without seeking leave of Court. Pursuant to Civil Local Rule 7-3(d), “once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval.” Plaintiff did not seek prior Court approval. However, because Defendants’ “objections” on this ground are not objections to the admissibility of evidence, the Court will not rule on such “objections.”

plaintiff's opposition to the motion for summary judgment ("Smith Decl. re Summary Judgment") on the grounds that the copy is not accurate and is barely legible, as well as for failure to authenticate and lack of foundation for the photograph. (Defendants' Evid. Object. at 3, 14.) Moreover, Defendants argue that the black and white copy does not show that the colors in Plaintiff's logo are orange and green and the colors of the alleged copy used by Defendants are yellow and blue. (Defendants' Evid. Object. at 3.)

"Authentication is a condition precedent to admissibility and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Orr*, 285 F.3d at 773 (internal quotes and citation omitted). On a motion for summary judgment, "documents authenticated through personal knowledge must be attached to an affidavit ... and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id*. (internal quotes and citation omitted).

In his declaration, Plaintiff's counsel simply states "attached is a true and correct copy of a photograph of the sign which was over Defendants' front door." (Smith Decl. re Summary Judgment, ¶ 3.) Plaintiff's counsel does not explain who took the photograph or on what basis, he has personal knowledge of the photograph and is an affiant through whom the exhibit could be admitted into evidence. The Court thus sustains Defendants' the objection and cannot consider the sign.

**b. Defendants' Website.**

Defendants object to Plaintiff's Exhibit H, which Plaintiff's counsel contends is a printout from Defendants' website showing a picture of their restaurant with the sign hanging in front, on the grounds of lack of foundation and failure to authenticate. In his declaration, Plaintiff's counsel describes the sign and characterizes Defendants' expert Ms. Perry's testimony regarding their domain name and use of the logo, to which Defendants also object on the grounds of hearsay. (Defendants' Evid. Object. at 17.) Defendants' hearsay objections are sustained.

In its response to the evidentiary objections, Plaintiff's counsel explains that he personally typed in www.losjarritos.com into his Web browser, accessed Defendants' website

United States District Court

For the Northern District of California

and printed the page.  (Response to Evid. Object. at 12.)  Although Plaintiff's counsel should have included such information in his declaration attaching the exhibit, he has demonstrated that he has personal knowledge of the exhibit and is an affiant through whom the exhibit could be admitted into evidence.  Accordingly, the Court overrules the lack of foundation and failure to authenticate objections.[6]

**c.     Third Party Valley Yellow Pages' Documents.**

Defendants object to the documents Plaintiff contends are Defendants' advertisement with the yellow pages and documents related to creating such advertisement, attached as Exhibits C, D, and E to the Smith Declaration, on the grounds of failure to authenticate and lack of foundation.  Plaintiff's counsel merely attached these exhibits to his declaration and stated that these are true and correct copies of third-party documents without providing any basis for his personal knowledge of such documents.  (Smith Decl. re Summary Judgment, ¶ 5.) Defendants further object to Plaintiff's counsel's statements in his declaration regarding such exhibits as hearsay and unsupported speculation.  In response to the evidentiary objections, Plaintiff submits additional evidence without leave of court which it contends authenticates these exhibits.  Even if the Court were to allow the submission of such evidence in violation of Civil Local Rule 7-3(d), the deposition excerpts submitted by Plaintiff do not clearly identify and authenticate documents or demonstrate that the exhibits attached to the declaration of Plaintiff's counsel are true and correct copies of documents described at the deposition. Accordingly, the Court sustains the objections to the exhibits and to Plaintiff's counsel's description of these documents.

**d.     Plaintiff's Purported Documents.**

Defendants object to Plaintiff's purported marketing documents attached as Exhibits J and L to the Smith Declaration on the grounds of lack of foundation, failure to authenticate, failure to produce during discovery, and hearsay.  (Defendants' Evid. Object. at 6, 7, 9, 18, 19.) Defendants also object to Plaintiff's counsel's description of the attached documents as hearsay.

---

[6] Unfortunately for Plaintiff, although the document is admissible, the copy of the Defendants' website submitted as Exhibit H has a picture of the sign that is too small and too blurry to portray the images Plaintiff contends are on the sign.

United States District Court
For the Northern District of California

Again, Plaintiff's counsel merely attached these documents and stated they were true and correct copies without providing any basis for his personal knowledge of such documents. (Smith Decl. re Summary Judgment, ¶¶ 10, 12.) In response to the evidentiary objections, without leave of Court, Plaintiff submitted a declaration by Nina Navarro, the Legal and Corporate Affairs Coordinator of Novamex, a subsidiary of Plaintiff. (Navarro Decl., ¶ 1.) Ms. Navarro declares that Exhibits L and J attached to the Smith Declaration are true and correct copies of a map of Plaintiff's distribution network and a document describing the Taqueria Program, respectively. (*Id.*, ¶¶ 3-4.) Although the Navarro Declaration was submitted in violation of Civil Rule Civil Local Rule 7-3(d), the Court will excuse the late filing and failure to seek leave of Court and consider the declaration in determining whether the exhibits are admissible. On the basis of the Navarro Declaration, the Court overrules the objections based on lack of foundation, failure to authenticate, and failure to produce during discovery and will admit Exhibits L and J. The Court sustains the objection to Plaintiff's counsel's description of the attached documents as hearsay.

**e. Plaintiff's Advertising.**

Defendants object to purported advertisements of Plaintiff's products attached as Exhibit N to the Smith Declaration on the grounds of hearsay. (Defendants' Evid. Object. at 9.) Defendants also object to Exhibit G attached to the Smith Declaration, which Plaintiff's counsel contends is a copy of an advertising image of bottles of Plaintiff's product, on the grounds of lack of foundation, failure to authenticate, and objects to the description of the purported advertisement by Plaintiff's counsel as hearsay. (Defendants' Evid. Object. at 17.) Additionally, Defendants object to Exhibit N attached to the Smith Declaration and Plaintiff's counsel's description of this document, which Plaintiff's counsel states is a copy of English language advertisements for Plaintiff's products and "an English language article published in a general U.S. audience magazine, *Jane*, which mentions Jarritos beverages." (Smith Decl. re Summary Judgment, ¶ 14.) The purported article is not attached. Defendants object to the exhibit on the grounds of lack of foundation, failure to authenticate, and failure to produce during discovery and to counsel's description as hearsay. The Court sustains the objections of

United States District Court
For the Northern District of California

failure to authenticate and lack of foundation and sustains the objection to Plaintiff's counsel's description as hearsay.

**f. Deposition Excerpts.**

Defendants object to the excerpts from deposition transcripts attached as Exhibits B, M, and R to the Smith Declaration on the grounds of failure to authenticate and the absence of the court reporters' certifications. In response, without leave of Court as required by Civil Rule Civil Local Rule 7-3(d), Plaintiff attached in a supplemental declaration the pages showing the deponents' names and the court reporters' certifications for all the excerpts it submitted in support of its opposition brief. (Supplemental Declaration of Neil Smith, Ex. D.) At the hearing on Defendants' motions, Defendants clarified that they do not contend that the attached excerpts are inaccurate or inauthentic, but only that Plaintiff failed to follow proper procedures in authenticating such excerpts. To authenticate excerpts from depositions, an attorney familiar with the deposition transcripts may submit and authenticate them by attaching an excerpt that identifies the names of the deponents and includes the reporter's certification that the deposition is a true and correct record of the testimony of the deponent. *Orr*, 285 F.3d at 774. Based on the submission of the additional evidence, albeit improperly filed, the Court overrules these objections.

Defendants also object to Plaintiff's counsel characterizations of what the deposition transcripts say as inadmissible hearsay. The Court sustains the objections as to Plaintiff's counsel characterizations of the deposition transcripts.

**g. Mr. Germain's Expert Report.**

Defendants argues that paragraph 13 of Mr. Germain's report, which discusses Defendants' arguments and cites a treatise on trademark law, is inadmissible hearsay. The Court overrules this objection. Defendants also object to the portion of Mr. Germain's report in which he discusses the meaning and implication of the word "Los" on the grounds that Plaintiff did not proffer Mr. Germain as an expert on the Spanish language or Mexican culture and he is not qualified to offer such opinion. Plaintiff did not respond to this objection. The Court sustains this objection.

Defendants further object to the substance of Mr. Germain's report on the grounds that the majority of the opinions in his report contain conclusions of law. (Defendants' Evid. Object. at 18.) Expert testimony regarding legal conclusions is inappropriate. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996) ("Expert testimony is not proper for issues of law. 'Experts interpret and analyze factual evidence. They do not testify about the law....'") (quoting *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988)); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir.1992) (finding matters of law are "inappropriate subjects for expert testimony"). The Court sustains this objection and thus finds inadmissible the portions of Mr. Germain's report which are conclusions of law.

Defendants also object to paragraph 9 in the declaration of Plaintiff's counsel regarding Mr. Germain's report on the grounds of hearsay. The Court overrules this objection.

**h. Book Cover.**

Defendants object to Exhibit P which Plaintiff's counsel contends is a cover of the book "Mexico's Greatest Brands" on the grounds of lack of foundation, failure to authenticate, failure to produce during discovery and to the description of the document by Plaintiff's counsel as hearsay. In his declaration attaching this exhibit, Plaintiff's counsel merely states that the attached exhibit "is a true and correct copy of the cover of the book "Mexico's Greatest Brands" (vol. 1)." (Smith Decl. re Summary Judgment, ¶ 16.) In response, Plaintiff states that its "counsel can authenticate a copy of the book in his possession, which is exactly what he did." (Response to Evid. Object. at 14.) The Court overrules this objection.

**3. Likelihood of Confusion.**

Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device" on any goods or in connection with any goods. 15 U.S.C. § 1125(a). To state a claim for infringement under Section 43(a), a plaintiff must meet three basic elements: (1) distinctiveness; (2) nonfunctionality; and (3) likelihood of confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992). At issue in the present motion is whether Plaintiff has sufficient evidence to demonstrate likelihood of confusion, *i.e.* "whether the similarity of the marks is likely to confuse the

United States District Court
For the Northern District of California

customers about the source of the products." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotations omitted). Plaintiff bears the burden of proving likelihood of confusion. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1243 (9th Cir. 1984).[7] "Likelihood of confusion requires that confusion be probable, not simply a possibility." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987); *see also Playboy Enterprises, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1083 (S.D. Cal. 1999) ("There must be a *substantial* likelihood that the public will be confused.") (emphasis in original) (citation omitted), *rev'd in part on other grounds*, 279 F.3d 796 (9th Cir. 2002).

To determine whether there is a likelihood of confusion between the marks, the Ninth Circuit applies the following eight factor test: "(1) the similarity of the marks; (2) the relatedness of the two companies' services;[8] (3) the marketing channel used; (4) the strength of [the plaintiff's] mark; (5) [the defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *Id*. However, "the eight-factor test is a pliant one, in which some factors are much more important than others." *Id*.

**a. Similarity of the Marks.**

The similarity of the marks is a critical question in this analysis. *GoTo.Com*, 202 F.3d at 1205. "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Id*. at 1206. The Ninth Circuit has developed certain axioms to guide the similarity analysis: (1) "the marks must be considered in their entirety and as they appear in the

---

[7] Plaintiff repeatedly argues that it does not bear any burden to produce evidence in opposition to Defendants' motion for summary judgment because Defendants did not meet their initial burden to show the absence of a genuine issue of material fact. However, when, as here, the nonmoving party bears the burden of proof, "the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (quoting *Celotex*, 477 U.S. at 325). In the present case, Defendants have pointed to the absence of evidence supporting Plaintiff's claims and have submitted evidence in support of their motion.

[8] Defendants cite *Murray v. Cable National Broadcasting Co.*, 86 F.3d 858, 861-61 (9th Cir. 1996), for the proposition that unrelated marks cannot infringe as a matter of law. While relatedness of the goods is a factor in determining likelihood of confusion, the Court disagrees that the absence of this one factor would be determinative as a matter of law.

marketplace;" (2) "similarity is adjudged in terms of appearance, sound, and meaning;" and (3) "similarities are weighed more heavily than differences." *Id*. at 1206 (citations omitted).

There is no admissible evidence in the record from which the Court can determine the similarity of the marks. According to Plaintiff, what appears on its bottles is the word "Jarritos" and a picture of three jugs. Plaintiff did not submit any evidence of this, but this fact does not appear to be disputed. The exhibit containing an alleged photograph of Defendants' sign is not admissible. Nevertheless, even if the Court could consider the exhibit, it does not demonstrate the marks are similar. Plaintiff further contends that the word "Jarritos" and a picture of the three jugs appears in the left hand corner of Defendants' sign in "JARRITOS colors." Without supporting evidence, Defendants argue that the colors of Plaintiff's logo are green and orange while the colors on their sign are blue and yellow. The copy of Defendants' sign submitted by Plaintiff is in black and white, so the Court cannot determine what colors were used. (Smith Decl. re Summary Judgment, Ex. A.) The name of Defendants' restaurant on the sign reads: "LOS JARRITOS 'a' MEXICAN RESTAURANT." The purported image of Plaintiff's logo on Defendants' sign is blurry and difficult to decipher. (*Id*.)

Viewed in context, while Plaintiff's logo may appear on Defendants' sign, other large print on the sign ("LOS JARRITOS 'a' MEXICAN RESTAURANT"), and perhaps the use of different colors, distinguish the two. Even if the evidence of Defendants' sign were admissible, based on such evidence, the Court cannot say the two marks are similar.

**b. Relatedness of the Companies' Services**.

The parties dispute whether their respective goods are related. "Related goods are generally more likely than unrelated good to confuse the public as the producers of the goods." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055-56 (9th Cir. 1999) (noting that if the parties did not compete to any extent whatsoever, the likelihood of confusion would probably be remote even though the marks were virtually identical); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened."). To determine whether goods are related, courts may consider whether the goods

are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979).

Defendants argue that their provision of restaurant services at one location is not related to Plaintiff's manufacture and distribution of soft drinks nationwide. Plaintiff contends that the parties share customers and that Plaintiff's soft drinks were ordered, served and enjoyed at Defendants' restaurant during the period of infringement. However, the evidence cited to by Plaintiff does not provide any support for this contention. (Smith Decl. re Summary Judgment, ¶ 9, Ex. I at ¶ 13.) Similarly, Plaintiff argues without supporting evidence that it "has a program in place with over 500 restaurants where Plaintiff provides the restaurants with items like coolers, place mats, menus and other advertising materials that include Plaintiff's [Jarritos word mark and logo] ... These restaurants have signed license agreements with Plaintiff to allow Plaintiff to put its name on these items that are used in the restaurants on a daily basis and which the restaurant customers see." (Opp. to Mot. for Summary Judgment at 6.)[9]

What Plaintiff points to that is supported by evidence in the record is the deposition testimony of Stanford Gross, who testified that with respect to Plaintiff's marketing programs and said "restaurants has [*sic*] always been a big part of our business." (Gordet Decl. re Summary Judgment, Ex. D at 43:3-13.) Thus, at most, it appears as though Plaintiff markets to restaurants to sell its soft drink. However, at least in the Federal Circuit, "the fact that restaurants serve food and beverages is not enough to render food and beverages related to restaurant services for purposes of determining confusion." *In re Coors Brewing Co.*, 343 F.3d 1340, 1345 (Fed. Cir. 2003). In that case, the Federal Circuit found that, despite the evidence presented that some restaurants brew or serve their own private label beer, the finding that beer and restaurants services were related was not supported by substantial evidence. *Id.* at 1345-46.

---

[9] Plaintiff cites to Exhibit J attached to the Smith Declaration, which at most provides evidence that Plaintiff's marketing department has developed some items with the Jarritos logo, including napkin holders, bottle openers, salt and pepper shakers "to assist in the execution of the Taqueria program." It does not provide evidence that restaurants have actually been using such products, let alone the purported 500 restaurants argued by Plaintiff, or that Plaintiff has licencing agreements with any restaurants.

The court reasoned that the percentage of restaurants that actually brew their own beer was very small and that it was quite uncommon for restaurants and beer to share the same trademark. *Id.* at 1346. Here, there is no evidence regarding the overlap between soft drinks and restaurants from which this Court could conduct a similar analysis. Thus, although there appears to be some relation between Plaintiff's soft drink and restaurants, there is no evidence in the record from which the Court may determine if the relationship is strong. Regardless, even if the Court could find that the goods were related based on this record, it would not alter the outcome of this motion.

**c. Marketing Channels Used.**

Defendants submit evidence demonstrating that the marketing channels used by them and by Plaintiff differ. (Gordet Decl., Ex. D at 83:18-84:1, 85:1-8, Ex. E. at 31:13-15, 92:19-93:20, 96:20-97:4, Ex. F. at 55:7-56:9, 98:13-19; Declaration of Dolores Reyes in Support of Defendants' Motion for Summary Judgment ("Reyes Decl."), ¶ 8.) Plaintiff does not submit any evidence to the contrary.

**d. Strength of Plaintiff's Mark.**

Defendants argue that there is no evidence demonstrating Plaintiff's mark is strong. Moreover, Defendants point to evidence of other restaurants in the United States operating under the name of "Los Jarritos," and argues that such evidence of non-exclusivity undermines the strength of Plaintiff's mark. (Gordet Decl., Ex. G at 5:18-22, Ex. H at 7:12-15, Ex. I at 10:2-13.) In response, Plaintiff does not point to any evidence to demonstrate the strength of its mark.

**e. Defendants' Intent in Selecting Their Mark.**

Defendants present evidence demonstrating that Ms. Reyes selected the name of the restaurant based on the personal, emotional significance of the word "jarritos" to her. (Gordet

United States District Court
For the Northern District of California

Decl., Ex. A at 219:5-13.) Again, Plaintiff argues that there is evidence of willful intent to copy, but does not actually submit any admissible supporting evidence.[10]

**f. Evidence of Actual Confusion.**

Defendants argue that despite over eighteen years of concurrent use by Defendants and Plaintiff of their respective marks, the fact that there is no evidence of actual confusion weighs heavily in their favor. (Gordet Decl. re Summary Judgment, Ex. A. at 73:15-17, Ex. C. at 33:13-34:3, Ex. D at 57:14-25, Ex. E. at 48:21-49:6, Ex. F. at 86:22-87:5.) In response, Plaintiff proffers arguments as to why Defendants' evidence should not be considered persuasive, but does not offer any evidence of its own demonstrating any incidents of actual confusion. Although Plaintiff cites to deposition testimony from Ms. Reyes from which it argues that in Defendants' view, the person who hand carved and made their restaurant sign, was actually confused or mistaken in believing that there was an association between Defendants and Plaintiff's soft drink, the testimony does not provide any support for this contention. (Smith Decl. re Summary Judgment, Ex. B at pp. 49-52.)[11] Additionally, Plaintiff argues that deposition testimony from one of its employees demonstrates that people have asked if "Jarritos" restaurants are connected to Plaintiff's Jarritos brand, but the evidence does not support this argument. (Opp. to Mot. for Summary Judgment at 11.) In his deposition, Francisco Hill hypothesized that "people drink Jarritos beverages, in the Mexican restaurants, and they believe that there is something associated; that there is a business associated with it." (Smith Decl. re. Summary Judgment, Ex. M.) Mr. Hill clarified he has never been informed of any instance in which a person was deceived into thinking that a particular "Jarritos" named restaurant was related to Plaintiff or the Jarritos brand beverage. (*Id.*) Thus, there is no evidence of actual confusion.

---

[10] While Plaintiff argues that Defendants used its logo on it their sign "to cause confusion," it does not submit any evidence of such intent. With respect to Plaintiff's argument that Defendants gave the Yellow Pages' advertising representatives a bottle of Jarritos soda to use in their ad, the Court has sustained Defendants' objections to the Yellow Pages' documents and thus, Plaintiff has no admissible evidence to support this argument.

[11] Plaintiff also argues as to what the Valley Yellow Pages' documents and the surveys conducted by Ms. Fowler and Ms. Valdvinos demonstrate, but the Court sustained Defendants' objections to such evidence.

United States District Court
For the Northern District of California

**g. Likelihood of Expansion Into Other Markets.**

Defendants submit evidence showing that Plaintiff has not considered opening up a restaurant or offering restaurant services and that Defendants have not considered, and have no plans to, expand their business to include drink manufacturing and/or distribution. (Gordet Decl., Ex. B at 16:14-17:11, Ex. C at 64:14-20, Ex. D at 43:14-44:4; Reyes Decl., ¶ 7.) Again, Plaintiff has not submitted any evidence to the contrary.

**h. Degree of Care Likely to be Exercised by Purchasers.**

Although both parties argue regarding the degree of care likely to be exercised by purchasers, neither submits any evidence on this point.

In conclusion, weighing all the *Sleekcraft* factors, at most, there is some indication in the record, although not supported by admissible evidence, regarding similarity, but not enough from which the Court may conclude that the marks are similar, and some evidence that Plaintiff's soft drink is sold in Mexican restaurants, such as Defendants. Thus, the evidence before the Court could not lead of a rational trier of fact to find for Plaintiff on the issue of likelihood of confusion. *See Matsushita Electric*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].").

Even if the Court could find that the parties' goods are related, the absence of any evidence demonstrating that any of the remaining eight factors tip in Plaintiff's favor warrant granting summary judgment. Plaintiff bears the burden of demonstrating that "confusion is probable, not simply a possibility." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842-43 (9th Cir. 2002) (citation and internal quotes omitted) (affirming summary judgment despite evidence that the goods and services were related based on plaintiff's failure to demonstrate confusion was likely). Plaintiff has not done so here.

Likelihood of confusion is a required element for Plaintiff's state-law common law and statutory claims for trademark infringement and unfair competition, as well as for its federal claim for false designation. *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir. 2005). Accordingly, the Court GRANTS Defendants' motion for summary

United States District Court
For the Northern District of California

judgment on Plaintiff's claims for California statutory trademark infringement, common law trademark infringement, unfair competition, common law palming off, federal false designation of origin, and trademark infringement under the Lanham Act.

**4. Dilution.**

Plaintiff's federal dilution claim is governed by the Trademark Dilution Revision Action Act of 2006 ("TDRA"). *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 504 (E.D. Va. 2006). The TDRA defines dilution as follows:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). To prove a dilution claim a plaintiff must demonstrate that the mark used by the alleged diluter is identical, or nearly identical, to the protected mark. *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002). Additionally, the plaintiff must prove that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir. 1999). Moreover, the TDRA revised the Federal Trademark Dilution Act to deny protection to marks that are famous only in "niche" markets. *Century 21 Real Estate LLC v. Century Ins. Group*, 2007 WL 484555, *14 (D. Ariz. Feb. 9, 2007) (citing House Report on Trademark Dilution act of 2005 at 8, 25).

"Dilution is a cause of action invented and reserved for a select class of marks – those marks with such powerful consumer associations that even non-competing uses can impinge on their value. ... Therefore, to meet the 'famousness' element of protection under the dilution statutes, a mark must be truly prominent and renowned." *Avery Dennison*, 189 F.3d at 875 (internal quotes and citation omitted); *see also Thane*, 305 F.3d at 911 ("the mark must be a household name").

United States District Court
For the Northern District of California

Defendants argue that Plaintiff's dilution claim fails because the marks are not identical, Plaintiff's mark is not famous, and that Defendants are not using the mark in a way that capitalizes on that mark's status in the soft drink market. Plaintiff admits that it needs to prove fame, but states that it "will do so, at trial." (Opp. to Mot. for Summary Judgment at 13.) Unfortunately for Plaintiff, to proceed to trial, Plaintiff had an obligation to submit evidence demonstrating the fame of its mark in opposition to the motion for summary judgment. The only evidence Plaintiff does submit is insufficient. Plaintiff points a document it argues demonstrates that Plaintiff distributes and advertises its beverage nationwide. (Opp. to Mot. for Summary Judgment at 13, citing Smith Decl. re Summary Judgment, Ex. L.) This document is one page, containing a map of the United States and the text: "100% Hispanic Coverage more than 50,000 points of sales, 220 Food Service Distributors, 209 Retail Distributors." (Smith Decl. re Summary Judgment, Ex. L.) Even if this document could be read to demonstrate Plaintiff's product is distributed nationwide, it does not address the volume of Plaintiff's sales, the breadth of Plaintiff's advertisements, or consumers' recognition of the mark. Plaintiff also points to the cover of the book "Mexico's Greatest Brands" portraying its logo, without any description of what the book actually states about Plaintiff's mark in Mexico, let alone in the United States. (Smith Decl. re Summary Judgment, Ex. P.) Finally, Plaintiff submits copies of advertisements of its product that allegedly were shown in *Jane* magazine. (Smith Decl. re Summary Judgment, Ex. N.) Even if this evidence were admissible, it provides no information regarding the distribution of this magazine or how times Plaintiff advertised its products in this magazine or in any other form. From such evidence, a reasonable juror could not find that Plaintiff's mark is famous in the United States.

Even if Plaintiff did have some evidence demonstrating its mark is famous, which the Court finds it does not, Plaintiff has not submitted *any* admissible evidence demonstrating that its mark was famous as of 1988, when Defendants opened their restaurant. On this basis alone, the Court grants Defendants' motion as to Plaintiff's federal dilution claim.

Moreover, Plaintiff is required to demonstrate that Defendants have been using its mark "as a trademark, capitalizing on its trademark status." *Avery*, 189 F.3d at 880. Plaintiff has not

submitted any evidence in support of this element. Accordingly, this provides an another, independent basis for granting Defendants' motion.

Plaintiff's state-law claim for dilution is substantially similar; only famous marks are protected under California Business and Professions Code § 14330. *Avery*, 189 F.3d at 874; *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) ("Panavision's state law dilution claim is subject to the same analysis as its federal claim."). The Court therefore GRANTS Defendants' motion for summary judgment as to Plaintiff's state-law claim for dilution for the same reasons.

**CONCLUSION**

For the foregoing reasons, the Court (1) DENIES Defendants' motion for sanctions to strike expert reports as to Mr. Germain's opening and rebuttal report, Mr. Dieste's supplemental statement, and the sole paragraph in each of Ms. Fowler's and Ms. Valdvinos' reports which reference Dr. Cuellar; (2) GRANTS Defendants' motion to strike as to the remainder of Plaintiff's experts' reports; and (3) GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 2, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE